IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:14-CV-14

| | |
|---|---|
| MICHAEL LAWRENCE KLINGER, | ) |
| **Plaintiff,** | ) |
| v. | ) **ORDER** |
| ROBERT J. AHERN, JOE WHITTINGTON, AND M. COFFEY II, | ) |
| **Defendants.** | ) |

**BEFORE THE COURT** are Defendants' Renewed Motions to Dismiss Pursuant to New Caselaw pursuant to Rules 12(b)(1),(2) and (6) of the Federal Rules of Civil Procedure. (Doc. 26). Plaintiff has filed a response (Doc. 35), to which Defendants have replied, (Doc. 41).

On November 21, 2014, this Court granted in part and denied in part Defendants Motion to Dismiss. (Doc. 25). Specifically, this Court refused to dismiss claims against Defendant Whittington and Ahern in their individual capacity. (*Id.*). However, the Court of Appeals had recently decided *Martin v. Wood*, 772 F.3d 192 (4th Cir. 2014) only three days prior. Accordingly, this Court will revisit its earlier order to determine whether dismissal is appropriate as to Whittington and Ahern, individually.

Merely claiming that suit is brought against a state employee in his or her individual capacity does not transform the suit into an individual capacity suit. *Martin*, 772 F.3d at 195-96. Rather, a court must "look beyond the form of the complaint and conclusory allegations against [the employee] to determine who is the 'real, substantial party in interest.'" *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984)).

1

In *Wood*, the Fourth Circuit identified a five factor inquiry analyzing the substance of the claims asserted against an individual. These factors are:

> 1. Were the allegedly unlawful actions of the state officials tied inextricably to their official duties?
>
> 2. If the state officials had authorized the desired relief at the outset, would the burden have been borne by the State?
>
> 3. Would a judgement against the state officials be institutional and official in character such that it would operate against the State?
>
> 4. Were the actions of the state officials taken to further personal interests distinct from the State's interests; and
>
> 5. Were the state officials' actions *ultra vires*?

*Id.* (quotations and citations omitted).

Accordingly, the Court will consider the following factors to determine whether the state is the real party in interest as opposed to Defendants Whittington and Ahern, individually.

1. <u>Were the allegedly unlawful actions of the state officials tied inextricably to their official duties?</u>

Defendants Ahern and Whittington are identified as North Carolina employees in the Complaint. Moreover, Ahern identified himself as "Special Agent for Criminal Investigation" when calling Plaintiff. (Doc. 1, at ¶ 11). Ahern then contacted third parties requesting information about Plaintiff by "flashing his badge and identifying himself as a special agent . . . signing his own summons[es]." (*Id.* at ¶ 13). Letters sent to Defendant Whittington were sent because he was Defendant Ahern's *supervisor*. (*Id.* at ¶ 17).

It is clear from the allegations of the Complaint that Ahern and Whittington were acting as officers of the State of the North Carolina. They were investigating purported violations of the

revenue laws, which is exactly what they were hired to do by the State. *See* N.C. Gen. Stat. § 105-236.1; § 105-256; *see also* Secretary of Revenue Memorandum dated February 16, 2009 (delegating authority to issue and serve summonses). Accordingly, the actions as alleged in the Complaint were tied inextricably to Defendants' official duties.

2. <u>If the state officials had authorized the desired relief at the outset, would the burden have been borne by the State?</u>

In creating this enquiry, *Martin* appears to reference note seventeen of the Supreme Court's *Pennhurst* decision.[1] To the extent this question is relevant to the instant case, the desired relief would have been borne by the state – whether the desired relief is characterized as written communications to Plaintiff or the taking of Plaintiff's sworn testimony.[2]

3. <u>Would a judgement against the state officials be institutional and official in character such that it would operate against the State?</u>

The conduct, as alleged, shows that Defendants were acting within the scope of their employment. *See infra*. North Carolina pays final judgments awarded against State employees acting within the scope of their employment. N.C. Gen. Stat. § 143-300.6; *see also* N.C. Gen. Stat. § 143-300.3 (providing that "State may provide for the defense of any civil . . . action . . . brought against [an employee] in his official or individual capacity."). Accordingly, a judgment would be institutional and official in character such that it would operate against the state.

4. <u>Were the actions of the state officials taken to further personal interests distinct from the State's interests?</u>

The actions taken by Defendants Ahern and Whittington were taken to enforce the tax laws of the State of North Carolina, which is unquestionably a state interest. Plaintiff argues in his

---

[1] The Court infers that the *Martin* opinion is referring to note seventeen because there is not a note seven on page 109 of the *Pennhurst* decision.
[2] The Court questions the applicability of this question to cases where funding or payment is not an issue. However, if the Court considers this to be akin to paying a judgment, the State would be responsible. *See* N.C. Gen. Stat. § 143-300.6.

3

response that Defendants' actions should be considered distinct from the State's because of the presence of performance bonuses. The Court notes that if an employee performs well, it benefits the employer. It is exactly this type of symbiotic relationship that a performance bonus is designed to encourage. Accordingly, the actions, as alleged, by Plaintiff do not show that Defendants' actions were taken to further personal interests *distinct from* the State's interests.

5. Were the state officials' actions *ultra vires*?

The Court's analysis above shows that Defendants actions were not *ultra vires*. Further, with regard to the allegations that Defendants improperly obtained Plaintiff's "personal records" (Doc. 1, at ¶ 32), it is clear that these records were received from private individuals in the course of Defendants' investigation. (Doc. 1, at ¶ 13). Therefore, Plaintiff's privacy rights were not violated by these actions. Accordingly, the actions, as alleged, were well within the powers granted to Defendants by the State of North Carolina.

**REMAINDER OF THE MOTIONS**

In addition to the supplemental motion to dismiss, several filings have been made. Plaintiff has filed two "objections" to the Court's November 21, 2014 order. The Clerk correctly docketed these as motions for reconsideration, rather than an objection under Rule 46. *Arthur R. Miller*, 9B Fed. Practice & Procedure § 2472 (3d ed. 2015) (referring to trials). Motions to reconsider are

> inappropriate where [they] merely seek[] to re-debate the merits of a particular motion. Nor were such motions intended "to give an unhappy litigant one additional chance to sway the judge. Rather, the purpose of a motion for reconsideration is to correct manifest errors of law or fact. A motion to reconsider is appropriate where the court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the court by the parties, or has made an error not of reasoning but of apprehension.

4

*Remediation Products, Inc. v. Adventus Americas, Inc.*, No. 3:07CV153-RJC-DCK, 2010 WL 2572555, at *1 (W.D.N.C. June 22, 2010) (internal citations and quotations omitted).

The Court **DENIES** Plaintiff's First Motion to Reconsider (Doc. 29) its Order as it applies to the dismissal of the claims against Defendant Ahern and Whittington because it raises no grounds that would cause the Court to reconsider its earlier Order. Further, the Court **DENIES** Plaintiff's First Motion to Reconsider (Doc. 29) as it relates to Defendant Coffey. Defendant Coffey arrested Plaintiff pursuant to a facially valid warrant. In his motion for reconsideration, Plaintiff makes the new argument that there was no probable cause to support the otherwise facially valid warrant because there is no written affidavit to support it. The Court rejects this argument. First, the claim is against Defendant Coffey – who was not the complainant for any of the warrants. Secondly, Plaintiff has not established that a written affidavit is required when probable cause can be established by a sufficient showing <u>under oath</u>. *State v. Harvey*, 187 S.E.2d 706, 708 (N.C. 1972); *see also* N.C. Gen. Stat. § 15A-304(d)(2)-(3). Thirdly, even if the warrants are defective in some manner, the warrant is not deficient in any manner facially so as not to provide immunity to Defendant Coffey.

The Court **DENIES** Plaintiff's Second Motion to Reconsider (Doc. 30) as it states no grounds that would cause the Court to reconsider its earlier order.

**IT IS, THEREFORE, ORDERED THAT**

(1) Defendant Ahern and Whittington's Second Motion to Dismiss for Lack of Jurisdiction (Doc. 26) is **GRANTED**;

(2) Plaintiff's Motions to Reconsider (Docs. 29-30) are **DENIED**; and

(3) As of now, all of Plaintiff's claims against all Defendants have been dismissed.

Signed: May 8, 2015

Richard L. Voorhees
United States District Judge